DANIEL W. BALLESTEROS -- BAR NO. 142003
SBLEND A. SBLENDORIO -- BAR NO. 109903
COLLEEN B. KELLEY -- BAR NO. 238294
HOGE, FENTON, JONES & APPEL, INC.
Sixty South Market Street, Suite 1400
San Jose, California 95113-2396
Phone: (408) 287-9501
Fax:  (408) 287-2583

Attorneys for Plaintiff
RUSSELL FARKOUH

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE

| | |
|---|---|
| In Re:<br><br>JAMES M. LIQUORI<br><br>    Debtor. | No. 10-55627 |
| RUSSELL FARKOUH<br><br>    Plaintiffs,<br><br>vs.<br><br>JAMES M. LIQUORI,<br><br>    Defendant. | Adversary No. :<br><br>RUSSELL FARKOUH'S COMPLAINT TO DETERMINE DISCHARGEABIILTY OF DEBT PURSUANT TO 11 U.S.C. §§523(a)(2)(A), 523(a)(4) and 523(a)(6) |

Plaintiff Russell Farkouh ("Farkouh"), by and through his undersigned counsel, brings this action against Debtor/Defendant James M. Liquori to determine the nondischargeability of a debt pursuant to Bankruptcy Code §§523(a)(2)(A), 523(a)(4), and 523(a)(6) and alleges:

    1.    Plaintiff is an individual who did business with defendant Liquori in the State of California with the purpose of investing in loans secured by real estate located in California.

    2.    Defendant James M. Liquori is the debtor in the above captioned bankruptcy case.

-1-

RUSSELL FARKOUH'S COMPLAINT TO DETERMINE DISCHARGEABIILTY OF DEBT PURSUANT TO 11 U.S.C. §§523(a)(2)(A), 523(a)(4) and 523(a)(6)

Case: 10-05295    Doc# 1    Filed: 08/26/10    Entered: 08/26/10 12:08:34    Page 1 of 12

3. Plaintiff and defendant Liquori have a long standing personal and business relationship. In their long business and personal relationship defendant Liquori presented to plaintiff, from time to time, various "investment opportunities." In 2008, plaintiff suffered a severe financial loss, which loss was well known to defendant Liquori. Defendant Liquori developed a strategy to invest plaintiff's remaining money in notes secured by deeds of trust. Plaintiff set forth the minimum criterion of what he wanted to invest in for the various investments and defendant Liquori agreed. Those criterion are set forth in a memo dated July 24, 2008. (The July 24, 2008, memorandum setting forth the investment criterion is attached hereto as **Exhibit A** and incorporated herein.) At this time, plaintiff gave defendant Liquori a check for $200,000, which defendant Liquori was to use for the investments. Defendant Liquori "warehoused" the money and paid plaintiff 8% interest.

4. In at least two separate transactions, defendant Liquori made false statements, misrepresentations and omissions in order to deceive plaintiff.

    a. Defendant Liquori represented to plaintiff that he would invest in certain deeds of trust meeting specific loan criteria as set forth in **Exhibit A**. As further alleged below, defendant Liquori intentionally and maliciously misrepresented the character of the loans in which he invested plaintiff's money and invested in far inferior notes and deeds of trust. In addition, defendant Liquori concealed the true nature of the loans from plaintiff.

    b. Moreover, defendant Liquori represented to plaintiff that he would purchase certain notes and deeds of trust but instead did not invest the money and used it for his own benefit. Defendant Liquori engaged in what is commonly known as a Ponzi scheme, wherein he used plaintiff's and other's trust in him to obtain money for "investment."

5. In or about November 2008 defendant Liquori allocated $42,100 of the $200,000 for the purpose of investing in a note and third deed of trust which deed of trust would be third in place secured by real property owned by a man named Budenbender In actuality, instead of being in third position the loan was in fifth position and was, in

-2-

RUSSELL FARKOUH'S COMPLAINT TO DETERMINE DISCHARGEABIILTY OF DEBT PURSUANT TO 11 U.S.C. §§523(a)(2)(A), 523(a)(4) and 523(a)(6)

Case: 10-05295　　Doc# 1　　Filed: 08/26/10　　Entered: 08/26/10 12:08:34　　Page 2 of 12

essence, unsecured, as due to its position, there was no equity in the property to secure repayment.

6. Additionally, in or about November 2008 defendant Liquori allocated $102,900 of the $200,000 for the purpose of investing in a first deed of trust for a borrower by the name of Bajaros. Defendant Liquori requested and plaintiff agreed to provide an additional $37,100 to fund this same loan, for a total of $140,000. Defendant Liquori agreed to invest the funds in a first deed of trust for a borrower named Bajaras.

7. At the time defendant Liquori made the above statements, misrepresentations and omissions, he knew them to be false.

8. On November 30, 2009, plaintiff and defendant Liquori met and defendant Liquori orally admitted to plaintiff that he did not invest plaintiff's $140,000 in the Bajaras loan, or at all. Rather he converted the money to his own use. Defendant later confirmed the statement in an email dated December 7, 2009. (See email dated December 7, 2009, attached hereto as **Exhibit B** and incorporated herein.)

9. In an email dated December 7, 2009, in response to a meeting summary sent to defendant Liquori by plaintiff on December 3, 2009, and attached hereto as Exhibit B, defendant Liquori admitted to plaintiff that he made the above false statements, misrepresentations and omissions.

10. Plaintiff justifiably relied upon the false statements, misrepresentations and omissions of defendant Liquori. Plaintiff did not know the statements to be false. Moreover, defendant Liquori's false statements proximately caused the loss suffered by Plaintiff.

## FIRST CAUSE OF ACTION

**DETERMINATION OF NON-DISCHARGEABIILTY OF DEBT BASED ON FALSE REPRESENTATION PURSUANT TO 11 U.S.C. §§523(A)(2)(A)**

11. Plaintiff realleges and incorporates paragraphs 1 through 10 by reference as though fully alleged herein.

12. Defendant Liquori's liability to plaintiff arises from the transactions in which he

-3-
RUSSELL FARKOUH'S COMPLAINT TO DETERMINE DISCHARGEABIILTY OF DEBT PURSUANT TO 11 U.S.C. §§523(a)(2)(A), 523(a)(4) and 523(a)(6)

Case\H:0:105\205\PENDING0\10829671e\6063842.doc#1    Filed: 08/26/10    Entered: 08/26/10 12:08:34    Page 3 of 12

was in a confidential, fiduciary relationship with plaintiff and he obtained his money by false representation. For the foregoing reasons, defendant Liquori's liability, in the separate amount of $182,100, is not dischargeable under 11 U.S.C. § 523(A).

## SECOND CAUSE OF ACTION

## DETERMINATION OF NON-DISCHARGEABIILTY OF DEBT BASED ON EMBEZZLEMENT PURSUANT TO 11 U.S.C. §§523(A)(4)

13. Plaintiff realleges and incorporates paragraphs 1 through 10 by reference as though fully alleged herein.

14. Defendant Liquori's liability to plaintiff arises from the transactions in which he embezzled his money and converted it to his own use by false representation. For the foregoing reasons, defendant Liquori's liability, in the separate amounts of amount of $182,100, is not dischargeable under 11 U.S.C. § 523(A)(4).

## THIRD CAUSE OF ACTION

## DETERMINATION OF NON-DISCHARGEABIILTY OF DEBT BASED ON WILLFUL AND MALICIOUS CONDUCT PURSUANT TO 11 U.S.C. §§523(A)(6)

15. Plaintiff realleges and incorporates paragraphs 1-10 by reference as though fully alleged herein.

16. Defendant Liquori's conduct was willful and malicious. For the foregoing reasons, defendant Liquori's liability, in the separate amount of $182,100, is not dischargeable under 11 U.S.C. § 523(A)(6).

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant Liquori as follows:

(a) declaring defendant Liquori's indebtedness to plaintiff arising out of the 5th deed of trust on the Budenbender property taken in November 2008, in the amount of $42,100, is a non-dischargeable debt pursuant to 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), and 11 U.S.C. § 523(a)(6);

(b) declaring defendant Liquori's indebtedness to plaintiff arising out of the Barajas loan, in the amount of $140,000, is a non-dischargeable debt pursuant to 11

-4-

RUSSELL FARKOUH'S COMPLAINT TO DETERMINE DISCHARGEABIILTY OF DEBT PURSUANT TO 11 U.S.C. §§523(a)(2)(A), 523(a)(4) and 523(a)(6)

Case\H:\EA-85\295\PENDING\0008295.Filed:.608/26/42.d6c10   Entered: 08/26/10 12:08:34   Page 4 of 12

1 | U.S.C. § 523(a)(4); 11 U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), and 11 U.S.C. § 523(a)(6);

   (c)   granting a nondischargeability judgment in favor of plaintiff against defendant Liquori, in a total amount of $182,100, plus, without limitation, pre-judgment and post-judgment interest as provided by law, reasonable attorney's fees costs and expenses, and;

   (d)   granting plaintiff any other and further relief to which they may be entitled.

DATED: August 25, 2010

HOGE, FENTON, JONES & APPEL, INC.

By _____
Colleen B. Kelley
Attorneys for Plaintiff
RUSSELL FARKOUH

-5-
RUSSELL FARKOUH'S COMPLAINT TO DETERMINE DISCHARGEABIILTY OF DEBT PURSUANT TO 11 U.S.C. §§523(a)(2)(A), 523(a)(4) and 523(a)(6)

EXHIBIT A

7-24-08

Jim,

Call me when you get this check for $200,000.

My parameters are:

1. 60% LTV (current appraisal)
2. 9-13% return monthly
3. your starting behind the loans
4. 6 to 18 mo. maturity
5. 1st or 2nd
6. reasonable credit

I am overnighting this to you — hopefully we can handle everything via mail.

Thanks,

Russell

7. ratio of 1st to 2nd not to high
8. title ins — if needed

EXHIBIT B

---------- Forwarded message ----------
From: **James Liquori** <signaturejim@sbcglobal.net>
- Hide quoted text -
Date: Mon, Dec 7, 2009 at 7:47 PM
Subject: Re: update on loans and 11/30/09 meeting
To: Russell Farkouh <russellpf27@gmail.com>

Russell

I had every intention of complying with your request on Saturday as I said I would as I had a "light" day as far as I knew. Cindy's family (her two kids & 2 grandchildren) had planned on going up to the Santa Cruz mtns to cut Xmas trees as is their tradition. I had informed them that I would not be going due to the situation with my back. As it turned out their car broke down and I was called to "rescue" the girls and the grandchildren while her son waited for the tow truck.

Sunday, had a problem with a domestic dispute that scared the next door neighbors in the duplex. Seems the wife was trying to keep the car keys from the husband as he was apparently under the influence. He got the keys, and

promply ended up totalling another neighbors car. Called the police who ended up arresting him.
I ended up giving them a notice to vacate the property by end of month.

It is now Monday, the 7th, The check for the Bigger loan (December) is in hand and that loan is performing as agreed. I believe you have a complete file on this loan. If you are missing something please let me know.

As I did promise in our telecon of Friday, I have placed calls and left messages for both Wiens & Budenbender to see about getting them each caught up. They are usually pretty good about returning calls within a day so I will update you with more specific info upon hearing what they are capable of.

I believe I gave you a copy of a letter I received from Budenbender's 1st lender that indicated the loan was not in default. Please check your file and if I did NOT include this letter I will mail or fax it to you (I do need your fax number however).

We can discuss the options on these 2 loans via a phone call later this week if you are available or when we meet on the 17th.

The information you have with regard to my real estate license is indeed correct.

I would also like to confirm that your summary outlined in the 1st 3 paragraphs of the December 3rd letter with regard to the $140K money to be on point. It is painful for me to see you put it in print as clearly as you expressed yourself as I don't get to "water it down" with the hows and whys..........but in the end the hows and whys do not matter anyway. Denial, anger, bargaining, depression and I believe hope are the steps is that correct?

I hope to be able to elaborate on a plan shortly.

Thank you again for some of the kindness your showed me on the 30th and again in your e-mail. Breathing in Love and exhaling Fear were new to me and helpful.

I'll have more for you later, (soon).

Jim

---

**From:** Russell Farkouh <russellpf27@gmail.com>
**To:** Jim Liquori <signaturejim@sbcglobal.net>
**Sent:** Thu, December 3, 2009 11:00:34 AM
**Subject:** update on loans and 11/30/09 meeting

Jim,

I have been expecting a written update on my loans with you and our meeting on Nov. 30, in an e-mail. It has been several days since you said on at least two occasions that you would do this. Nothing in writing has come from you. Why not? I am in shock since you told me when we met on November 30, that you didn't use the $140,000 to fund the Barajas loan because you didn't have enough money to fund the loan some months ago. What did you do with my money that was in your trust and should have been in your trust account? It seems you made a unilateral decision to take a personal loan from me without my consent.

I appreciate the payments you have been making but I was under the impression you had funded the Barajas loan months ago. I work for over 1 week to make that payment of $1283.33. It would take me about about 4000 hours or 2-3 years to earn $140,000. if I could get the work steady. I am 65 years old and this was borrowed money I was using to invest for the spread as you know from our many discussions. This was a strategy you helped me devise in the past year or so so that I can continue to pay my bills. I asked you how long you can continue to make the payments of $1283.33 to me....you didn't

answer.

You seem to have converted $140,000 of the $237,100. I gave you to invest in seconds TD's at 60% LTV into a personal loan to you at 11% without collateral and without my consent. I don't know what else to make of it. Jim, I want to work with you....that is in both our best interest..... so I need to know when I can get my money back and how long you will make the payments to me. I need a plan from you and some viable collateral for my $140,000. Can you do this?

If what I have stated above is inaccurate in any way please clarify.

In our 4.5 hour meeting we had on Nov. 30, you also said the Weins loan for $25,000 was delinquent but they made a recent payment and plan to make double payments to catch up. Is that correct? You also said that the Bigger loan for $30,000 is current and is the best loan I have. Bigger shares your office I believe and is an appraiser. The Budenbender loan for $84,200 which we share 50/50 is about 6 months deliquent. You have made some of those payments to me. You said she recently made a payment and is your most difficult client and you kept asking me what I want to do? You also said she gave you a current statement from the first lender which you requested that shows the loan current....I don't have a copy of this statement and would like one. I asked you 3 times if you sold your half of the loan and you said no each time I asked.

Is the above correct? Please elaborate and/or clarify.

I also asked you if you had a valid real estate license and you showed me a laminated card in your wallet identifying you as a broker with license number 00611415 valid thru 2013. Is this correct?

You and I have shared so much over the years beginning with the loan on Linzen Court in the 90's I believe. Please be honest with me as I assume you started to do on Nov. 30 and intend to continue to do. I am glad you have found some medication that allows you to function. Please continue to do so with a clear head. I know these are difficult times and I also know you to be a kind, considerate, compassionate, respectful and honorable man. Please restore my confidence as I feel betrayed personally and professionally. It is one thing to have a loan go bad....it is entirely another thing to take the money entrusted to you to fund a loan and use it for other purposes.

I look forward to your written response.

Thanks,

Russell


**Colleen B. Kelley** | Attorney
cbk@hogefenton.com  408.947.2429 direct

**Hoge Fenton Jones & Appel** | Silicon Valley Office
60 South Market Street• Suite 1400• San Jose • CA • 95113
www.hogefenton.com

The information in this e-mail message may be privileged, confidential, and protected from disclosure. If you are not the intended recipient, any use, dissemination, distribution or copying is strictly prohibited. If you have received this communication in error, please immediately notify the sender and permanently delete all copies, electronic or other, you may have. This applies even if this notice is embedded in a message that is forwarded or attached.

**IRS Circular 230 Disclosure.** IRS regulations generally provide that, for the purpose of avoiding federal tax penalties, a taxpayer may rely only on formal written advice meeting specific requirements. Any tax advice in this message (including any attachments) does not meet those requirements and is not intended or written to be used, and cannot be used, for the purpose of avoiding federal tax penalties or promoting,

| | |
|---|---|
| 1 | **PROOF OF SERVICE BY MAIL** |
| 2 | I, the undersigned, say: |
| 3 | I am now and at all times herein mentioned have been over the age of 18 years, |
| 4 | employed in Santa Clara County, California, and not a party to the within action or |
| 5 | cause; that my business address is 60 South Market Street, San Jose, California |
| 6 | 95113-2396. I am readily familiar with the firm's business practice for collection and |
| 7 | processing of correspondence for mailing with the United States Postal Service. I |
| 8 | served copies of the attached ***RUSSELL FARKOUH'S COMPLAINT TO DETERMINE*** |
| 9 | ***DISCHARGEABILITY OF DEBT PURSUANT TO 11 U.S.C. §§523(a)(2)(A), 523 (a)(4)*** |
| 10 | ***and 523(a)(6)*** by placing said copies in envelopes addressed to: |
| 11 | Charles B. Greene |
| 12 | Attorney at Law<br>84 W. Santa Clara Street, Suite 770<br>San Jose, CA 95113 |
| 13 | Phone No.: (408) 279-3518<br>Fax No.: (408) 279-4264 |
| 14 | James Liquori's bankruptcy attorney |
| 15 | which envelopes were then sealed and, with postage fully prepaid thereon, were on |
| 16 | 8/25/2010 placed for collection and mailing at my place of business following ordinary |
| 17 | business practices. Said correspondence will be deposited with the United States |
| 18 | Postal Service at San Jose, California on the above-referenced date in the ordinary |
| 19 | course of business; and there is delivery service by United States mail at the place so |
| 20 | addressed. |
| 21 | I declare under penalty of perjury under the laws of the State of California that |
| 22 | the foregoing is true and correct and that this Declaration was executed on 8/25/2010. |
| 23 | |
| 24 | *Jessica J. Palmer* (signature) |
| 25 | Jessica J. Palmer |
| 26 | Court Action No: 10-55627 |
| 27 | Case Name: In Re: James M. Liquori |
| 28 | |

-1-